IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JAMES WILLIAM WALKER, | CV 19-00073-GF-JTJ |
| Plaintiff, | |
| vs. | ORDER |
| CROSSROADS CORRECTIONAL CENTER, PAT McTIGHE, and CORRECTIONAL OFFICERS BAKER, WOODROW, and DALEY, | |
| Defendants. | |

Pending before the Court is Defendants Crossroads Correctional Center ("CCC"), Pat McTighe, and Correctional Officers Baker, Winrow, and Daley's motion for summary judgment. (Doc. 43.) The motion is fully briefed and will be granted for the reasons described below.

## I.  FACTUAL BACKGROUND[1]

Plaintiff James William Walker is a Montana state prisoner proceeding pro se. He is currently incarcerated at Montana State Prison ("MSP") but the events underlying his Amended Complaint occurred at Crossroads Correctional Center in

---

1 These facts are drawn from the parties' Statement of Undisputed Fact (Doc. 44) and Statement of Disputed Facts (Doc. 50), except as noted. Walker did not disagree with much of Defendants' SUF. Any dispute between the parties is mentioned.

Shelby, Montana, during 2019. During the time at issue here, Walker was classified as Minimum 1.

On May 14 and July 23, 2019, Walker was transported from CCC to Great Falls, Montana, for medical appointments. During transport on both occasions, Walker was restrained in what is called a "black box restraint," which holds his wrists to his waist with a belly chain. Walker told Defendants Baker and Winrow during transport on May 14 that his wrists were hurting. Defendants advised him that CCC policy prevented them from removing the restraint. The policy requires inmates to be in full restraints during transportation, including the black box, but allows for certain exemptions related to pregnancy and other medical conditions. (Doc. 46-1.) Following this trip in May, Walker was seen by the prison medical staff at CCC for complaints about his wrists due to use of the restraint. He was treated with over-the-counter medication and ice.

The initial factual dispute between the parties arises at this point. Defendants state that Walker filed a number of grievances after the May trip related to the restraint. The response from the Medical Bureau Services Chief on July 10, 2019, was that Walker was not entitled to use special restraints due to a medical condition exemption. (Doc. 44 ¶ 10.) Walker elaborates this exchange by stating that before his filed his May 15, 2019, he consulted with "newly appointed Health Administrator Ms. Hartman," who confirmed that he had had surgery on his wrist

and that he had arthritis that was being treated. (Doc. 50 at 1.) He says, however, that Ms. Hartman was not the person who responded to Walker's 5/15/2019 grievance, with the implication that the grievance response is not proof that Walker did not have a condition worthy of an exemption, or that CCC was unaware of it. *Id.* He also says that Ms. Hartman recommended to him a method of having his wrists handcuffed at his sides, which would be less painful. (Doc. 50 at 2.)

Walker was again transported, this time by Defendants Baker and Daley, for medical appointments on July 23, 2019. Before this trip, Defendant McTighe personally applied the box restraint to Walker in order to assure it was applied properly. (Doc. 46 at 2 – 3.) Walker complained during the trip once more, and the restraint was not removed. After the trip, he sought medical treatment, which included ice, antibiotic ointment, and Tylenol.

Walker filed copies of the medical reports that resulted from his visits to the nurse after both trips with his Amended Complaint. These reports mention pain, possible bruising, marks associated with the cuffs, redness, slight swelling, and "faint skin disruption" on one wrist.  (Doc. 10-3 at 1 – 5, 11 – 15, and 19 - 20.)

Walker was scheduled for a further medical trip to Great Falls on October 2, 2019, but he refused to when he was informed that he would be restrained with the black box.

Walker filed this action on October 28, 2019, seeking damages and

injunctive relief, to prevent further use of the black box. (Doc. 1.) This Court

screened his Complaint and directed him to file an Amended Complaint that cured

its deficiencies. (Doc. 8.) Walker filed an Amended Complaint on February 20,

2020, which the Court ordered served. Walker withdrew his request for injunctive

relief against the use of black box restraints as he was moved from CCC to MSP.

(Doc. 37 at 1.)

## II. ANALYSIS

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." The movant bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). A material fact is one that might affect the outcome of the suit

under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must

go beyond the pleadings and designate by affidavits, depositions, answers to

interrogatories, or admissions on file, "specific facts showing that there is a

genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B. Eighth Amendment

The Eighth Amendment protects prisoners from various forms of maltreatment, including the excessive use of force by prison personnel and the denial of adequate medical care. Walker asserts both kinds of claims. (Doc. 10 at 4.) These claims require different analyses.

####    1.    Excessive Force

"'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (*quoting Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). Where prison officials stand accused of using excessive force in violation of the Eighth Amendment "the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "[T]he Supreme Court has long held that the Eighth Amendment forbids the application of force by officers against an inmate for the very purpose of causing harm." *Hoard v.*

*Hartman*, 904 F.3d 780, 782 (9th Cir. 2018) (internal citations and quotations omitted.). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley*, 475 U.S. at 319.

The following factors are considered in determining whether the use of force was wanton and unnecessary: the need for force; the relationship between the need and the amount of force used; the extent of the injury inflicted; "the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (citing *Whitley*, 476 U.S. at 321.

The use of force alleged by Walker is the discomfort associated with the black box restraint, exacerbated by his alleged arthritis and other wrist problems. The courts that have analyzed this issue have uniformly determined that the use of the restraints per se, without any evidence of malicious or sadistic motivation, is not unconstitutional. See, e.g., *Moody v. Proctor*, 986 F.2d 239, 241–42 (8th Cir. 1993); *Fulford v. King*, 692 F.2d 11, 14–15 (5th Cir. 1982), *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 764–65 (7th Cir. 2021).

Walker has never alleged that the application of the restraint was done pursuant to a malicious motivation, with an intent to harm him. He refers to the use alternately as negligent (Doc. 10 at 4), "blindly implemented" (Doc. 10-2 at 3), and

reckless (Doc. 49 at 4 – 5.). But he never asserts, much less raises as a factual dispute, that these defendants used the black box with an intent to cause harm. Even if he suffered wrist pain as a result of the restraint, there is no evidence that defendants acted maliciously or sadistically, or with deliberate indifference. *Moody v. Proctor*, 986 F.2d 239, 241–42 (8th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Wilson v. Seiter,* 501 U.S. 294 (1991).) Nor has he raised a dispute regarding the need for the box for security purposes. "The box's use outside of the prison is for a rational reason, security, and is directed by a standard prison policy, not left to unfettered discretion of guards. Under these circumstances, it is not within our power to substitute our judgment for that of the prison officials." *Fulford v. King*, 692 F.2d 11, 14–15 (5th Cir. 1982).

Applying the *Hudson* factors identified above, the Court finds that Defendants are entitled to summary judgment. Through the affidavits of Defendant McTighe and CCC's current warden, Defendants have established that the full restraints are necessary to mitigate the risks of escape and to reduce the need for additional staff and security measures. (Docs. 46 and 47.) The legitimate penological need for the restraints is proportionate to the amount of "force" used with the black box, which may result, and did result, in Walker's case, in only de minimis injury. Walker has not raised a genuine issue of material fact that precludes summary judgment.

## 2.    Denial of Medical Care

To state a §1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

The Ninth Circuit has established a two-pronged test for deliberate indifference to medical needs: (1) "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The second prong requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 quoting *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways.  It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

As applied to Walker's allegations, to establish that his right to medical care

was violated, he must first establish that Defendants were aware of his serious medical need. Walker's contentions are a bit confusing about what his serious medical need is. He does not assert that the nurses who treated him after his transports were indifferent to his care. As to the Defendant officers restraining him (and not relieving him from restraint), the serious medical need appears to be the condition of his wrists, either as a pre-existing issue before the black box was placed, or the discomfort he felt while the restraints were on. *See, e.g.*, Doc. 49 at 6.

As to the first contention, even though he refers to all of his medical history, his various diagnoses, and his prior wrist injury, he never asserts that the people placing the black box restraint on him were aware of any prior medical need at all. Further, he states elsewhere that "the medical department never conducted an evaluation of plaintiffs [sic] impairment or disability therefore no one in the medical department knew plaintiffs [sic] physical limitations with his left hand, and nerve damage suffered." (Doc. 49 at 2.) There is no contention or factual support for the idea that these defendants knew he should not be placed in restraints due to any medical condition; therefore, they could not be deliberately indifferent to a serious medical need.

As to the second contention, Walker alleges that the Defendants "bus[ied] themselves with snacking and listening to music" and therefore exhibited

deliberated indifference to Walker's medical need during the time of his transport. (Doc. 10-2 at 2.) But Walker does not create a genuine issue of material fact that his discomfort at the time was a serious medical need that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm*, 680 F.3d at 1122. To succeed on this claim, Walker must establish both that Defendants failed to respond to his need, and that harm was caused by that failure. Giving Walker the benefit of construing the facts in his favor, and accepting that he felt nerve pain and discomfort from the restraints, there is no allegation that the restraints caused anything more than this discomfort.

An alternate position for Walker is that after the first trip in May, when he sought medical treatment and grieved the situation, the response to his grievances and denial of his request for a different type of restraint exhibited deliberate indifference. (Doc. 49 at 2.) His contends that these grievance responses contained "the same falsehood that plaintiff had no physical impairment that required alternate restraints." Walker has not asserted a triable issue of fact on this claim. He did not submit any evidence to create a dispute regarding the medical staff's assessment of his need for alternative restraints. He raises this issue explicitly in his surreply brief, in which he says the restraint policy should take all of his medical conditions into consideration. (Doc. 52.) But this Court's role is not to substitute its judgment for the judgment of prison officials. There is no obvious

reason why Walker's medical conditions of high blood pressure, leaky heart valve, etc., should make the black box inappropriate. The restraint policy as written leaves the discretion to the Health Services Administrator or the facility physician to determine the need for a medical exemption. (Doc. 47-1 at 3.) Walker has not created a triable dispute of material fact that the denial of an exemption for him manifested deliberate indifference to a serious medical need.

## C. Individual Defendants

The preceding discussion is a general evaluation of what Walker needed to establish in order to create genuine issues of material fact. For the following additional reasons, specific Defendants are entitled to summary judgment.

### 1. Crossroads Correctional Center

This Court's analysis of Walker's claim against CCC[2] in his original Complaint advised him that to sufficiently allege a *Monell* claim, he must demonstrate that (1) he was deprived of a constitutional right; (2) Crossroads had a policy or custom; (3) the policy or custom amounted to deliberate indifference to his constitutional right; and (4) the policy or custom was the moving force behind

---

[2] Defendants are correct that Walker's Amended Complaint suffers from a technical pleading error, because he named the CCC building rather than its owner and operator, CoreCivic. (Doc. 45 at 11.) However, the Court will see past this pleading error, since Defendants submitted the CoreCivic policy with their affidavits, and counsel for Defendants are counsel for CoreCivic. No party is prejudiced by the Court evaluating this claim on its merits.

the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). (Doc. 8 at 10.) Defendants assert that CCC is not subject to *Monell* liability because Walker has not asserted something related to a CCC policy. (Doc. 45 at 10 – 11.)

However, Walker did assert that CCC's restraint policy was unconstitutional. (Doc. 10-2 at 1 – 2 and 5.) Walker contends that the policy is deficient because it does not direct an individualized consideration of each inmate before restraint is applied. (Doc. 49 at 3.) However, the policy clearly does allow for medical exemptions in certain medical circumstances. (Doc. 46-1 at 3.) The problem for Walker, as demonstrated here, is that the evaluation of him, pursuant to his grievances, was that he was not medically entitled to such an exemption. Walker disputes this conclusion—that he was not entitled to an exemption—but he cannot show that the temporary discomfort he experienced was a sufficient reason to grant an exemption. But more important, the policy would be the source of the *Monell* liability, and the policy allows for individualized treatment. CCC's policy is not, in itself, unconstitutional.

As to Walker's claims that CCC staff should have known better, or looked into his complaints in depth, this claim cannot be alleged against CCC as an entity. Walker asserts that CCC knew or should have known that he had a wrist injury that made the restraints cruel (and manifested deliberate indifference to a medical

12

condition) (Doc. 49 at 6), and that CCC should have sent him to a specialist to evaluate his "orthopedic injury site." (Doc. 49 at 7.) But these claims are not *Monell* claims that can be asserted against CCC as an entity. These are specific claims about the specific knowledge or inaction of persons, and he has failed to allege these claims regarding the actions of anyone in particular. CCC is entitled to summary judgment.

### 2. Officers Baker, Daley, and Winrow

Walker's claims against Defendants Baker, Daly, and Winrow stem from the fact that these officers transported him during his May and July trips. The record does not state who exactly put the restraints on Walker in May. In July, Defendant McTighe did, as discussed below. Walker alleges that these defendants should have taken the restraints off him when he complained of pain, should have told him prior to his departure in May that he would have to wear the restraints the whole time, and evinced deliberate indifference when they failed to do so. (Doc. 10-2 at 2.)

Baker, Daley, and Winrow acted in conformance with the policy that requires transportees to remain restrained, absent an approved medical exemption. These guards had no reason to know of any prior injury that Walker contends caused him additional pain. Nor could they be expected to violate policy and undo his restraint when he was not suffering from anything that could be construed as a

serious medical issue. Walker has not created a genuine issue for trial that these defendants were deliberately indifferent to his medical need, or that they imposed the restraint with malice. Walker therefore has failed to establish an issue for trial on their violation of his constitutional rights.

### 3.   Warden McTighe

The Court previously established that Walker can only state a claim against McTighe for his personal involvement in any constitutional deprivation, not simply in his role as a supervisor. (Doc. 8 at 6 – 9.) Walker's specific allegations against McTighe include that McTighe personally put the restraint on Walker for the July trip, (Doc. 10-3 at 3), and that McTighe was "directly involved in subjecting Plaintiff" to the restraint, "despite prior knowledge that Plaintiff had already suffered injuries from its use." (Doc. 10-2 at 5.) He then asserts that McTighe's actions were "reckless" and "in total disregard for Plaintiff's well-being." Walker contends that McTighe had an obligation as a supervisor but does not state specifically what supervisory liability he might have. He says McTighe should have told the transporting officers to contact him if there were problems on the July trip. *Id.*

Walker has failed to assert a claim of either excessive use of force or deliberate indifference to medical needs against McTighe. It is undisputed that McTighe wanted to apply the restraint himself because he wanted to make sure it

was done correctly. In no way does that raise an issue that he intended for the restraint to cause injury to Walker, or that he acted maliciously, giving rise to a claim for excessive force. In fact, McTighe advised Walker on how to minimize the discomfort related to the restraint. (Doc. 46 at 3.)

Further, there is no genuine issue of material fact that McTighe was deliberately indifferent to a medical need. From McTighe's perspective, he knew that Walker did not have a medical exemption from the black box restraint, and that medical staff had reviewed the issue. (Doc. 46.) There is no allegation that he knew of a medical need that Walker had and deliberately disregarded it. McTighe is entitled to summary judgment.

### III.   CONCLUSION

The record demonstrates that there are no genuine disputes of material fact that preclude summary judgment in this matter. Walker experienced discomfort with the use of black box restraint within the realm of what is expected of its use, and which has been determined to be within the bounds of constitutional restraint, given the countervailing interests of security and staff safety. Defendants were not deliberately indifferent to Walker's serious medical need.

Based upon the foregoing, the Court issues the following:

### ORDER

1.     Defendants' motion for summary judgment is GRANTED. (Doc. 43.)

2.    The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.    The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 23rd day of February, 2022.

John Johnston
United States Magistrate Judge